**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TODD NEIBARGER,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 2:26-cv-1131**<br>**Judge Douglas R. Cole**<br>**Magistrate Judge S. Courter M. Shimeall** |
| **LICKING METROPOLITAN HOUSING AUTHORITY, *et al.*,** | : | |
| **Defendants.** | : | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, Todd Neibarger, an Ohio resident proceeding without the assistance of counsel, has submitted a request to file a civil action in forma pauperis.[1] (ECF No. 1.) The Court **GRANTS** Plaintiff's motion to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

Plaintiff filed his original complaint on September 11, 2026. (ECF No. 1-1.) On September 24, 2026, Plaintiff filed his First Amended Complaint. (ECF No. 9.) On September 29, 2026, Plaintiff filed a further amended complaint titled "Civil Rights Complaint for Damages, Injunctive Relief, and Federal Racketeering/Conspiracy Redress Pursuant to 42 U.S.C. § 1983," which the Court will from hereon refer to as the Second Amended Complaint ("SAC"). (ECF No. 17.) Because Plaintiff had already amended his Complaint once as a matter of course under Federal Rule of Civil Procedure 15(a)(1) (*see* ECF No. 9), Plaintiff needed either leave of Court

[1] Plaintiff filed a second request to proceed *in forma pauperis* on October 13, 2026. (ECF No. 26.) Because the Court is granting Plaintiff's initial request to proceed in forma pauperis, his second request is **DENIED as moot**.

or the written consent of Defendants in order to amend his Complaint a second time. *See* Fed. R. Civ. P. 15(a)(2). Because Plaintiff obtained neither, his SAC was improperly filed.

In light of Plaintiff's *pro se* status, the Court liberally construes Plaintiff's Second Amended Complaint as a motion for leave to amend his Complaint under Rule 15(a)(2). The early stage of the case, combined with the absence of any prejudice to Defendants, weighs in favor of granting amendment. Accordingly, Plaintiff's motion for leave to amend is **GRANTED** and the Second Amended Complaint supersedes all earlier versions of the complaint. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes." (quotation and citation omitted)).

Accordingly, this matter is also before the Court for the initial screen of Plaintiff's SAC as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's SAC, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Also pending before the Court are Plaintiff's "Emergency Motion to Compel Production of State Court Records or for Substitution of the Record" (ECF No. 2), "Emergency Motion for Electronic Mail Service and Forwarding of All Case Correspondence and Docket Entries Since July 23, 2026" (ECF No. 3), "Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Fed. R. Civ. P. 65" (ECF No. 4), "Emergency Motion to Compel the Issuance of Federal Civil Rule 45 Subpoenas Duces Tecum Upon Third-Party Public Agencies" (ECF No. 7), "Emergency Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 10), "Motion for Email Correspondence Due to Lockout" (ECF No. 16), "Motion For Order Directing Service" (ECF No. 19), "Emergency Motion for Ex Parte Restraining

Order" (ECF No. 20), "Notice and Emergency Request for Electronic Notification (CM/ECF)" (ECF No. 21), "Emergency Motion to Compel Immediate Ruling on Pending Emergency Temporary Restraining Order" (ECF No. 25), "Emergency Motion for a Universal Order Preserving Evidence, Restraining Spoliation of Physical and Electronic Records, and Enjoining the Destruction or Cleanout of Locked-in Medical and Personal Property" (ECF No. 29), and "Emergency Notice of Exigent Circumstances, Imminent Medical Threat, and Renewed Request for Immediate Expedited Ruling Solely on Pending Emergency Motions (Ex Parte TRO, Medical Access, Section 8 Voucher Reversal, Indigent Subpoena Authority Under 28 U.S.C. § 1915, and Evidence Preservation)" (ECF No. 30).

Shortly after he initiated this case, Plaintiff filed a "Notice of Removal" (ECF No. 6), along with the state court records of a domestic relations action originally filed against him in the Licking County Court of Common Pleas (26-DR-655). (ECF No. 12.) On September 11, 2026, the same day that Plaintiff filed this action, he appealed his state domestic relations case to the Ohio Fifth District Court of Appeals (26-CA-69).[2] That action remains pending.

Having performed the initial screen, and for the reasons below, it is **RECOMMENDED** that the Court **DISMISS without prejudice** Plaintiff's federal claims to the extent that he seeks declaratory and injunctive relief invalidating the state court protective order, **DISMISS** with prejudice Plaintiff's federal claims to the extent that he seeks other declaratory and injunctive relief or monetary relief, and **DECLINE** to exercise supplemental jurisdiction over any purported state-law claim. As a result, it is further **RECOMMENDED** that Plaintiff's other pending motions

[2] Viewed at https://researchoh.tylerhost.net/CourtRecordsSearch/ui/county/LickingCaseSearch, using Plaintiff's name and case number. This Court "may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969); *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

(ECF Nos. 2, 4, 7, 10, 19, 20, 25, 29, 30) be **DENIED as moot**. Plaintiff's motions seeking electronic notice (ECF Nos. 3, 16, and 21) are **GRANTED**.

## I. INITIAL SCREEN

### A. BACKGROUND

Plaintiff is "a 57-year-old disabled adult suffering from Stage 3 Chronic Kidney Disease, complex cardiac reconstruction, avascular necrosis, and severe orthopedic impairments." (ECF No. 16, PAGEID #: 272.) In his SAC, he asserts various claims against the following Defendants in their individual and official capacities: Bobbie Cotterman and her son, Logan Hayes; Licking Metropolitan Housing Authority ("LMHA"); Molina Healthcare of Ohio, Inc. (Mycare Ohio) ("Molina"); New Beginnings Domestic Violence Shelter; Licking County Prosecutor's Office ("LCPO"); and LCPO Victim Witness Director Mark Weiner and Assistant Prosecutor Zach West. (ECF No. 17.)

Plaintiff alleges that he is the "sole authorized head of household and leaseholder" of "25 Weston Road, Apartment A, Newark, Ohio 43055" (the "Apartment"). (*Id.* at PAGEID #: 272.) Ms. Cotterman was allowed at the Apartment "strictly as a medical accommodation and non-paid, non-agency respite provider." (*Id.* at PAGEID #: 274.) On July 13, 2026, while recovering from surgery, Plaintiff "verbally terminated" Ms. Cotterman's caregiver role. (*Id.* at PAGEID #: 274.) Plaintiff alleges that Ms. Cotterman then coordinated with her son, Mr. Hayes, to enter the Apartment, remove her belongings, and steal two cell phones. (*Id.* at PAGEID #: 274.) Ms. Cotterman then relocated to 30 Darrin Drive, Newark, Ohio. (*Id.*)

Plaintiff alleges that, on July 23, 2026, Ms. Cotterman filed a "false ex parte petition." (*Id.* at PAGEID #: 275.) The state court records reflect that, following an ex parte hearing on July 23, 2026, the Licking County Common Pleas Court entered a Domestic Violence Civil Protection

Order ("CPO") requiring Plaintiff to vacate the Apartment and granting exclusive possession of it to Ms. Cotterman. (ECF No. 12, PAGEID #: 125–27.) Plaintiff also alleges that Ms. Cotterman intercepted his mail and court notices. (ECF No. 17 at PAGEID #: 275.) As a result, Plaintiff says that "[f]or over sixty (60) days," he has had to pay "100% of his disability funds to pay Section 8 rent and utilities for a home he is blockaded from entering," and that he has been "deprived of life-sustaining medical equipment and medications." (*Id.*)

Plaintiff alleges that LMHA "ignored formal requests to invoke [Violence Against Women Act ("VAWA")] protections, emergency transfers, and continuity of care mandates." (*Id.*) He alleges that representatives from New Beginnings, a domestic violence shelter and advocacy organization in Newark, Ohio, "acted as active co-conspirators by coaching Defendant Cotterman to exploit court machinery." (*Id.* at PAGEID #: 273.) He claims LCPO and its employees, Victim Witness Director Weiner and Prosecutor West, refused to investigate Plaintiff's claims. (*Id.* at PAGEID #: 275.)

As relief, Plaintiff seeks compensatory and punitive damages, a declaration that the state court protective order is unenforceable, injunctive relief restoring his possession of the Apartment and restraining actions against his tenancy at the Apartment, the issuance of a gag order against Ms. Cotterman, and attorney's fees. (ECF No. 17, PAGEID #: 278–89.)

### B. LEGAL STANDARD

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, was enacted to allow a person of limited financial means to have access to the courts. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992). However, to prevent abuses of that leniency, the federal district courts must also review all *in forma pauperis* actions and dismiss any lawsuits or causes of action that the Court determines are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary

relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See Hill*, 630 F.3d at 470–71 (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations," it does demand "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Thus, a complaint that asserts only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" will be insufficient. *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and quotations omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

Further, although the Court is to liberally construe *pro se* complaints "and hold such complaints to a less stringent standard than pleadings prepared by attorneys . . . this lenient

treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting in part *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). The Court "should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594. Stated differently, Rule 8 bars "a pleading party from 'cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Hartzell v. Miami Cnty. Incarceration Facility*, No. 3:17-CV-63, 2017 WL 2590199, at *2 (S.D. Ohio June 15, 2017) (quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011)).

Finally, "federal courts have an ongoing 'duty to consider their subject matter jurisdiction . . . and may raise the issue *sua sponte*.'" *Howard v. Good Samaritan Hosp.*, No. 1:21-CV-160, 2022 WL 92462, at *2 (S.D. Ohio Jan. 10, 2022) (quoting *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)). Thus, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

**C. ANALYSIS**

Plaintiff brings six counts in his Second Amended Complaint:

- Count 1 – Deprivation of Procedural Due Process (14th Amendment via 42 U.S.C. §1983) against Ms. Cotterman;
- Count 2 – Unreasonable Seizure (4th Amendment via 42 U.S.C. § 1983) against Ms. Cotterman and Mr. Hayes;
- Count 3 – Civil Rights Conspiracy (42 U.S.C. § 1983, § 1985 & § 1986) against Ms. Cotterman, Mr. Hayes, New Beginnings, LCPO, and LCPO Victim Witness Director Weiner and Prosecutor West;
- Count 4 – Violations of the Americans with Disabilities Act & Rehabilitation Act against Defendants LMHA and Molina;
- Count 5 – Fair Housing Act & Violence Against Women Act (VAWA) Violations against LMHA and Ms. Cotterman; and

- Count 6 – Misprision of Felony (18 U.S.C. § 4) & Dereliction of Duty (O.R.C. §2921.44) against LCPO, and LCPO Victim Witness Director Weiner and Prosecutor West.

Plaintiff seeks damages and attorney's fees as well as declaratory and injunctive relief. For the reasons that follow, Plaintiff cannot recover the relief he seeks.

**i. The Court lacks subject-matter jurisdiction over Counts 1–3.**

**1. Rooker-Feldman**

Plaintiff's SAC is not a model of clarity. That said, as best the Court can discern, Counts 1–3 assert claims for deprivation of due process, unreasonable seizure, and civil conspiracy arising from Plaintiff's exclusion from the Apartment under the state-court CPO. Plaintiff seeks, among other relief, a declaration invalidating the CPO and an injunction reversing the exclusion it imposed. Plaintiff's Count 1 alleges Ms. Cotterman "weaponized fraudulent state *ex parte* procedures to strip Plaintiff of his federal housing subsidy and residence without a meaningful evidentiary hearing." (ECF No. 17, PAGEID #: 276.) Plaintiff brings Count 2 against Ms. Cotterman and Mr. Hayes for allegedly participating in the "state-assisted lockout, warrantless eviction, and barricading of Plaintiff" from the Apartment. (*Id.*) Count 3 alleges Ms. Cotterman, Mr. Hayes, New Beginnings, LCPO, and LCPO Victim Witness Director Weiner and Prosecutor West engaged in a civil conspiracy to "interfere with Plaintiff's federal leasehold and civil rights." (*Id.*)

At their core, Counts 1–3 challenge Plaintiff's state court-ordered exclusion from the Apartment. Count 1 challenges the deprivation accomplished through the *ex parte* procedure; Count 2 characterizes the exclusion as an unreasonable seizure; and Count 3 alleges a conspiracy to accomplish and perpetuate the deprivation.

Because Plaintiff seeks review and rejection of a state court judgment through Counts 1–3, those Counts are barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fid. Tr. Co.,* 263 U.S.

413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983). "The *Rooker-Feldman* doctrine embodies the notion that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). The *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005). "The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d at 548 (cleaned up). Notably, the decision of the state court need not be a "final judgment" to implicate *Rooker-Feldman*; all that is required is that the state court issued a "merits determination," as opposed to taking a "merely ministerial" action. *See RLR Invs., LLC v. City of Pigeon Forge, Tennessee*, 4 F. 4th 380, 389, 393 (6th Cir. 2021) (holding that a state court decision is a "judgment" for *Rooker-Feldman* purposes if the state-court judge "investigates, declares and enforces liabilities as they stand on present or past facts and under laws").

As the Court construes Counts 1–3, the injury asserted in those counts is the state court-ordered exclusion itself, and Plaintiff seeks relief premised on review and rejection of that determination. Accordingly, the Court lacks jurisdiction over Plaintiff's Counts 1–3. For these reasons, it is **RECOMMENDED** that Plaintiff's Counts 1–3 be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

### ii. Plaintiff's federal claims fail to state a claim on which relief may be granted.

Even if a reviewing court were to determine that this Court could exercise jurisdiction over Counts 1–3, the Undersigned alternatively recommends dismissal of those Counts with prejudice for failure to state any federal claim upon which relief may be granted. Plaintiff's Counts 4–6 likewise fail to state any federal claim upon which relief may be granted.

#### 1. Section 1983 Claims Against Defendants Cotterman and Hayes (Counts 1 and 2)

Plaintiff also brings § 1983 claims against private individual Defendants Cotterman and Hayes (Counts 1 and 2). Plaintiff's SAC identifies Ms. Cotterman as a "a former, unpaid respite care worker." (ECF No. 17, PAGEID #: 273.) Mr. Hayes is Ms. Cotterman's adult son. (*Id.*)

To succeed on a claim under § 1983, Plaintiff must plead two elements: that he was (1) "deprived of a right secured by the Constitution or laws of the United States," and (2) "that such deprivation was caused by a person acting under color of state law." *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023) (cleaned up). And "[a]lthough private citizens acting in concert with state officials may be subject to § 1983 liability," Plaintiff offers "no factual support or evidence upon which a conspiracy could be based." *Horton v. Martin*, 137 F. App'x 773, 776 (6th Cir. 2005) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)).

The SAC alleges that Ms. Cotterman acted under the color of state law by "weaponiz[ing] fraudulent state ex parte procedures to strip Plaintiff of his federal housing subsidy and residence," but the SAC fails to identify a state official who agreed to participate in a fraudulent scheme, describe an agreement with such an official, or specify official participation beyond the state court's issuance of the order. (ECF No. 17, PAGEID #: 276.) Accordingly, Plaintiff's § 1983

claims against Ms. Cotterman and Mr. Hayes fail because he does not plausibly allege that these private Defendants were acting under color of state law.

For these reasons, if a reviewing Court determines that this Court could exercise jurisdiction over Counts 1 and 2, the Undersigned alternatively **RECOMMENDS** that Plaintiff's Counts 1 and 2 be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.[3]

### 2. Civil Conspiracy Claim (Count 3)

The Court further recommends that Plaintiff's civil conspiracy claim (Count 3) also be dismissed. Plaintiff brings his civil conspiracy claim under 42 U.S.C. § 1983, § 1985, and § 1986 against Ms. Cotterman, Mr. Hayes, New Beginnings, LCPO, and LCPO Victim Witness Director Weiner and Prosecutor West.

First, Plaintiff's vague and conclusory allegations of a conspiracy are insufficient to state a cognizable claim under 42 U.S.C. § 1983. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *see also Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). A plaintiff is required to demonstrate "a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks*, 771 F.2d at 943–44. In addition, "[c]laims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004); *see*

[3] The Sixth Circuit has interpreted § 1915(e)(2) to mandate "that a complaint filed by a [plaintiff] proceeding in forma pauperis be dismissed with prejudice if it is frivolous or fails to state a claim." *Hix v. Tennessee Dept. of Corrections*, 196 F. App'x 350, 354 (6th Cir. 2006) (citing § 1915(e)(2)); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("The language of § 1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners.").

*also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("[P]leading requirements governing civil conspiracies are relatively strict." (citation omitted)). Here, Plaintiff makes only conclusory allegations that the Defendants conspired to deprive him of his rights and does not plead any specific facts to support those allegations. He has therefore failed to state a claim for conspiracy under 42 U.S.C. § 1983. *Farhat*, 370 F.3d 580, 599.

To the extent Plaintiff brings his conspiracy claim under 42 U.S.C. § 1985, the Court also recommends that it be dismissed. Section 1985 prohibits conspiracies to deprive persons of certain civil rights on account of their membership in a protected class. *See* 42 U.S.C. § 1985(2)–(3). Plaintiff does not allege that any Defendants' actions were motivated by racial animus or were class-based. Rather, Plaintiff appears to allege that Defendants' alleged actions were motivated by a desire to "bypass small claims filing fees and execute a property heist." (ECF No. 17, PAGEID #: 276.)

The Court likewise finds that Plaintiff's civil conspiracy claim against Defendants fails to the extent that he brings it under § 1986. "Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990).

Accordingly, if a reviewing Court determines that this Court could exercise jurisdiction over Count 3, the Undersigned alternatively **RECOMMENDS** that Plaintiff's civil conspiracy claim (Count 3) be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted.

### 3. Violations of the Americans with Disabilities Act & Rehabilitation Act against Defendants LMHA and Molina (Count 4)

The Undersigned next turns to Plaintiff's Count 4, which alleges that Defendants LMHA and Molina violated Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Under the ADA, the term 'public entity' is a broad one: it encompasses 'any State or local government,' as well as 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Tri-Cities Hldgs, LLC v. Tenn. Admin. Proc. Div.*, 726 F. App'x 298, 308 (6th Cir. 2018) (quoting 42 U.S.C. § 12131(1)(A)–(B)). Title II of the ADA requires the plaintiff to show that: (1) he has a disability; (2) he is a "qualified individual"; and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of" his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing 42 U.S.C. § 12132).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A Rehabilitation Act claim includes the element that the state program or entity receives federal funds. *See Burns v. City of Columbus*, 91 F.3d 836, 841 (6th Cir. 1996).

The Sixth Circuit evaluates ADA and Rehabilitation Act claims similarly, *see Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000)—with one caveat, *see Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240 (6th Cir. Aug. 3, 2022). The ADA and Rehabilitation Act have slightly different causation standards: the ADA requires that discrimination occur "because of" a plaintiff's disability, and the Rehabilitation Act requires that it occur "solely by reason of" a plaintiff's disability. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) (en banc). Despite this one difference, courts frequently analyze together claims brought under the two respective statutes. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) ("The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both."); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 924 (6th Cir. 2016) ("[T]he ADA and Rehabilitation Act cover largely the same ground.").

Plaintiffs may assert Title II ADA claims based upon intentional discrimination or a lack of reasonable accommodation. *Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Commissioners*, 870 F.3d 471, 488 (6th Cir. 2017) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)).

To succeed on an intentional discrimination claim, Plaintiff must plead and prove that he: "1) had a qualifying disability, 2) was otherwise qualified to participate in the public program, service, or activity at issue, and 3) was excluded from participation in the public program or was discriminated against by the public entity because of his . . . disability." *Shaffer v. City of Columbus*, 444 F. Supp. 3d 872, 879 (S.D. Ohio 2020) (citing *Fritz v. Michigan*, 747 F. App'x 402, 404 (6th Cir. 2018)).

To succeed on a reasonable accommodation claim, Plaintiff must plead and prove that he was "excluded from participation in, denied the benefits of, or subjected to discrimination because of" a disability due to the public entity's failure to make a "reasonable modification." *Larson v. Eppinger*, No. 2:20-cv-4997, 2021 WL 2659998, at *6 (S.D. Ohio June 29, 2021) (citing 28 C.F.R. § 35.130(b)(7)(i)).

Plaintiff alleges that he is disabled and that LMHA and Molina failed to aid after he was excluded from his residence. He claims that LMHA and Molina "ignored formal requests to invoke VAWA protections, emergency transfers, and continuity of care mandates" and "stonewall[ed] requests for reasonable accommodations, refus[ed] to enforce federal preemption under the Supremacy Clause, and attempt[ed] to coerce Plaintiff into an unwanted nursing facility rather than restoring his home-based care." (ECF No. 17, PAGEID #: 275, 277.)

Even assuming that LMHA and Molina are covered by Title II and the Rehabilitation Act, Plaintiff's Count 4 fails. To the extent that Plaintiff alleges intentional discrimination, he alleges no facts supporting a reasonable inference that LMHA's or Molina's alleged conduct was motivated by discriminatory animus. To the extent Plaintiff alleges a failure to accommodate, he does not sufficiently describe a needed modification sought from Molina and LMHA and its denial. He collectively alleges that LMHA and Molina ignored requests for emergency transfers and continuity of care but does not adequately explain what action he sought from each Defendant, how that action would provide meaningful access to LMHA's or Molina's services and benefits, or what each Defendant did in response beyond the generalized assertion that they "stonewalled" his requests. Plaintiff's more developed allegations concern LMHA's failure to enforce his asserted tenancy rights and intervene against the effects of the state court order, but he does not

explain how that alleged failure constituted denial of a needed modification providing meaningful access to LMHA's program.

As to Molina, Plaintiff alleges that Molina violated the "federal *Olmstead* integration mandates." (ECF No. 17, PAGEID #: 273.) Under *Olmstead v. ex rel. Zimring*, the "unjustified institutional isolation of persons with disabilities" is, in and of itself, a prohibited "form of discrimination." 527 U.S. 581, 119 (1999). Plaintiff does not describe the home-care arrangement or modification he requested after terminating Ms. Cotterman, the service Molina allegedly denied, or the conduct constituting its alleged attempt to coerce him into a nursing facility. The generalized assertions that Molina failed to provide "continuity of care" and violated integration requirements do not supply a sufficient factual account of the alleged attempted institutional placement. Accordingly, Plaintiff has failed to state a claim under the ADA or Rehabilitation Act.

For these reasons, it is **RECOMMENDED** that Plaintiff's Count 4 against LMHA and Molina be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

#### 4. Fair Housing Act & Violence Against Women Act Violations against LMHA and Ms. Cotterman (Count 5)

The Undersigned next turns to Plaintiff's Count 5, which brings claims for violations of the Fair Housing Act ("FHA") and VAWA against LMHA and Ms. Cotterman.

First, Plaintiff's brings his FHA claim under 42 U.S.C. § 3631. That statutory provision, however, provides for criminal penalties for violations of the FHA and does not create a private cause of action. *Marar v. Cottages of Lavergne 2000 HOA, Inc.*, No. 3:15-1070, 2016 WL 3745363, at *4 (M.D. Tenn. July 13, 2016), *report and recommendation adopted sub nom. Marar v. The Cottages of Lavergne 2000 HOA, Inc.*, No. 3-15-1070, 2016 WL 4238506 (M.D. Tenn. Aug. 10, 2016). Accordingly, Plaintiff does not state a claim for relief under 42 U.S.C. § 3631.

Even construing Plaintiff's SAC liberally as asserting a civil FHA claim does not establish a plausible claim. Among other things, the FHA prohibits discrimination in the sale or rental of housing on the basis of race, color, religion, sex, familial status, national origin, or handicap. *See* 42 U.S.C. § 3604. Plaintiff alleges that Ms. Cotterman misused a protection-order proceeding to obtain possession of his residence and describes her conduct as "fair housing intimidation." (ECF No. 17, PAGEID # 277.) He contends that LMHA failed to enforce his asserted tenancy rights. (*Id.*) But Plaintiff's SAC contains insufficient factual allegations connecting either Defendant's conduct to discrimination on a protected basis. Accordingly, to the extent that Count 5 brings a civil FHA claim against LMHA and Ms. Cotterman, it should be dismissed.

Plaintiff also seeks relief under VAWA's housing provision, 34 U.S.C. § 12491. That provision does not create a private right of action to enforce its protections. *Haywood v. Warner Robins Hous. Auth.*, No. 5:25-CV-00296-CAR, 2026 WL 867389, at *2 (M.D. Ga. Mar. 30, 2026) (collecting cases). Rather, the statutory scheme assigns implementation and enforcement to the Secretary of Housing and Urban Development and the Attorney General. *Id.* Accordingly, to the extent Plaintiff seeks to bring a direct cause of action under § 12491, he fails to state a claim.

For these reasons, it is **RECOMMENDED** that Plaintiff's Count 5 against LMHA and Ms. Cotterman be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

**5. Misprision of Felony (18 U.S.C. § 4) (Count 6)**

The Undersigned next turns to Plaintiff's Count 6, which, among other things, alleges violations of 18 U.S.C. § 4 against LCPO, as well as LCPO Victim Witness Director Weiner and Prosecutor West. Specifically, Plaintiff alleges that Ms. Cotterman engaged in criminal acts including perjury, falsification, and mail fraud. Plaintiff further alleges that despite reporting her

crimes, those Defendants "took affirmative steps to conceal these felonies, falsely categorized them as 'civil litigation,' and refused to make mandatory grand jury referrals." (ECF No. 17, PAGEID #: 277.)

18 U.S.C. § 4 is a criminal statute prohibiting misprision of a felony that does not provide a private right of action to individuals. *Matthews v. Dayton Police Dep't*, No. 3:18-CV-26, 2018 WL 2191394, at *1 (S.D. Ohio May 14, 2018), *report and recommendation adopted sub nom. Matthews v. Betsinger*, No. 3:18-CV-026, 2018 WL 3609489 (S.D. Ohio July 27, 2018). Thus, Plaintiff's Count 6 does not state a plausible claim for relief to the extent that he brings it under 18 U.S.C. § 4.

Accordingly, to the extent that Plaintiff brings Count 6 under 18 U.S.C. § 4 against any of the Defendants, it is **RECOMMENDED** that Plaintiff's Count 6 be **DISMISSED with prejudice**.

**iii. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim.**

**1. Dereliction of Duty (O.R.C. § 2921.44) against LCPO, and LCPO Victim Witness Director Weiner and Prosecutor West.**

Plaintiff's Count 6 also contains a state-law claim for dereliction of duty against LCPO, and LCPO Victim Witness Director Weiner and Prosecutor West. Plaintiff's remaining claim pertains squarely to state law and does not arise under federal laws or the United States Constitution. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." The Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations omitted).

Plaintiff has not alleged that he and Defendants are citizens of different states. Thus, Plaintiff has failed to plausibly allege facts on which the Court could conclude that this Court has original subject-matter jurisdiction over his state-law claims.

Because the Undersigned is recommending dismissal of all of Plaintiff's federal claims, it is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and that it **DISMISS** any such claims **without prejudice** to filing in state court.

## II. NOTICE OF REMOVAL (ECF No. 6)

As discussed above, following an *ex parte* hearing on July 23, 2026, the Licking County Common Pleas Court entered a Domestic Violence Civil Protection Order requiring Plaintiff to vacate the Apartment and granting exclusive possession of it to Ms. Cotterman. (ECF No. 12, PAGEID #: 126–27.) On September 11, 2026, the same day that Plaintiff filed this action, he appealed his state domestic relations case to the Ohio Fifth District Court of Appeals. That action remains pending.

Meanwhile, on September 18, 2026, Mr. Neibarger filed a "Notice of Removal" in this case, purporting to remove the state domestic relations action pending against him to this Court. (ECF No. 6.) The Court notes that the proper procedure for removal of a case, from state court to federal court, requires the party seeking removal to file notice of removal in a newly instituted case in federal court. The removing party must institute a separate case in federal court for each state court case that is removed. Of course, a removing party may note that a newly removed matter is related to a previously filed action, but that does not excuse the obligation to initiate a new action.

To the extent that Plaintiff's federal court filings are an attempt to remove the state action, he has failed to properly remove that case. Specifically, "[t]he statutes governing removal provide

no mechanism for the removal of a state court action to a case that is pending in federal court. Instead, they contemplate the institution of a new federal court action when a state court action is removed to federal court." *Jalon v. Bank of Am.*, No. 22-4039, 2023 WL 6429607, at *2 (E.D. Pa. Sept. 29, 2023). Thus, a notice of removal filed in an already-existing civil lawsuit instituted in federal court is improperly filed. *Id.* Moreover, "[w]ithout proper removal, a state-court action does not belong in federal court in the first place." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996).

Because the instant civil action was pending in this federal district court, and Plaintiff subsequently attempted to remove a separately pending state court action into this pending federal civil action, the notice of removal (ECF No. 6) was improper, and therefore, it is **RECOMMENDED** that the state court action, to the extent it was deemed properly removed, be **REMANDED**.

## III. MOTIONS FOR ELECTRONIC NOTICE

In his "Emergency Motion for Electronic Mail Service and Forwarding of All Case Correspondence and Docket Entries Since July 23, 2026" (ECF No. 3), "Motion for Email Correspondence Due to Lockout" (ECF No. 16), and "Notice and Emergency Request for Electronic Notification (CM/ECF)" (ECF No. 21), Plaintiff requests that the Court send him Court filings via email. To the extent that Plaintiff requests that he receive service by email, his Motions (ECF Nos. 3, 16, and 21) are **GRANTED**. Plaintiff is limited, however, to only *receiving* service of Court documents by electronic mail. He is not permitted to file electronically at this time.

The Clerk is **DIRECTED** to **ADD** Plaintiff's email address as listed in ECF No. 21 to the docket and to serve him with the Court's orders, etc., via email rather than by mail. If Plaintiff wishes to change his email address, he may file a notice with the Clerk.

## IV. OTHER PENDING MOTIONS

In light of the Undersigned's recommendation that the Court dismiss Plaintiff's claims, it is further **RECOMMENDED** that Plaintiff's other pending motions (ECF Nos. 2, 4, 7, 10, 19, 20, 25, 29, 30) be **DENIED as moot**.

## V. CONCLUSION

Plaintiff's first motion to proceed *in forma pauperis* (ECF No. 1) is **GRANTED**, and his second motion to proceed in forma pauperis (ECF No. 26) is **DENIED as moot**. Plaintiff's Plaintiff's Second Amended Complaint (ECF No. 17), construed as motion for leave to amend his Complaint under Rule 15(a)(2), is **GRANTED**. Plaintiff's "Emergency Motion for Electronic Mail Service and Forwarding of All Case Correspondence and Docket Entries Since July 23, 2026" (ECF No. 3), "Motion for Email Correspondence Due to Lockout" (ECF No. 16), and "Notice and Emergency Request for Electronic Notification (CM/ECF)" (ECF No. 21) are **GRANTED** to the extent he requests that he receive service by email.

For the reasons set forth above, it is **RECOMMENDED** that the Court:

1. **DISMISS without prejudice** Plaintiff's Counts 1–3 for lack of subject-matter jurisdiction;
2. In the alternative, should the Court determine that any jurisdiction exists over Counts 1–3, **DISMISS with prejudice** Plaintiff's Counts 1–3 for failure to state a claim on which relief may be granted.
3. **DISMISS** with prejudice Counts 4–6 for failure to state a claim on which relief may be granted.
4. **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state-law claim in accordance with 28 U.S.C. § 1367(c)(3), such that his state-law claim is **DISMISSED without prejudice** to re-filing in state court.

5. **REMAND** the state court action insofar as it was deemed properly removed.
6. **DENY as moot** Plaintiff's other pending motions (ECF Nos. 2, 4, 7, 10, 19, 20, 25).

Until the District Judge issues a ruling on this Report and Recommendation, Plaintiff is **ORDERED** to stop filing documents other than a properly filed objection to this Report and Recommendation.

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**